UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE McDUEL,

          Plaintiff,

v.

PRECISION PROPERTY MANAGEMENT/
WEST MI RENTALS,

          Defendant.

_____/

Case No. 1:23-cv-777

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

Pro se plaintiff Stephanie McDuel filed a verified amended complaint against defendant Precision Property Management/West MI Rentals.  *See* Amend. Compl. (ECF No. 10).[1] This matter is now before the Court on defendant's combined motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and in the alternative for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 23).  The motion is unopposed.

       **I.**       **Ms. McDuel's amended complaint**

The amended complaint sets forth the following allegations. Ms. McDuel rented an apartment at Boulder Ridge Apartments in Wyoming, Michigan. Amend. Compl. at PageID.32. She received assistance from the State of Michigan (Michigan State Housing Development Authority or MSHDA) to pay rent through the "housing choice voucher program". *Id*.  She paid $16.00 per month for rent, while the program paid $734.00.  *Id*.  She was summoned to court on

---

[1] Defendant points out that while the amended complaint names one defendant (Precision Property Management / West MI Rentals), "Precision Property Management" and "West MI Rentals" are distinct legal entities.  *See* Defendant's Brief (ECF No. 24, PageID.136).  The Court notes that the lease agreement identified the landlord as "West Michigan Rentals, c/o Precision Property Management" (ECF No. 17-2, PageID.70).

several occasions for non-payment of rent and late fees.  *Id*.  She had receipts for rent payments but defendant's ledger had an incorrect balance.  *Id*.  *See* Exhibit (ECF No. 17-1, PageID.75-87).[2]

An attorney from Legal Aid of Western Michigan represented Ms. McDuel at a trial held on February 27, 2019.  Amend. Compl. at PageID.32.  Judgment was entered against her on February 28, 2019 in the amount of $425.40 (ECF No. 17-5, PageID.91).  Another judgment appears to have been entered on May 9, 2019 in the amount of $271.80 (ECF No. 17-5, PageID.95).  A Notice to Quit / Termination of tenancy was given to her on or about June 17, 2019, advising that "You must move by Aug 31st 2019 or your landlord/landlady may take you to court to evict you."  Notice (ECF No. 17-7, PageID.109).

On June 27, 2019, Ms. McDuel's "private & personal vehicle [a 2010 Kia Soul] was towed and impounded by Merl's Towing company without knowledge or consent, while she was still residing at the property."  Amend. Compl. at PageID.32.  In a letter directed to the Michigan Attorney General's Consumer Protection Division, the president of Merl's Towing advised that

> On June 27, 2019 at 07:02 a.m. our Company received a phone call from Jamie Swainston, Agent representing Precision Property Management requesting removal of a 2010 KIA Soul . . . [located at] Boulder Ridge Apartments . . .

Merl's Towing Letter (July 22, 2019) (ECF No. 17-6, PageID.104).  Ms. McDuel also filed a letter from Jamie Swainston at Precision Property Management (PPM) dated March 3, 2023, which allegedly relates to the June 27, 2019 towing.  However, PPM's 2023 letter refers only to "this incident" and Ms. McDuel did not include the attachments referenced in the letter.  In addition, while both letters are addressed to officials at the State of Michigan, the reference number on the

---

[2] McDuel filed exhibits in a separate document (ECF No. 17) about two months after filing the amended complaint.

2023 PPM letter does not match the reference number on the 2019 Merl's Towing letter.[3]

Nevertheless, the PPM letter stated as follows:

> I am responding on behalf of Precision Property Management. The letter dated 2/8/2023 from the State of Michigan is the 1st time we have heard of this incident. The previous tenant (Stephanie McDuel) never reported this to management or maintenance. We have never been notified by anyone that a vehicle was towed or missing. We have checked our records and Stephanie McDuel signed a lease on 8/16/2018 and was evicted on 05/9/2019 for non-payment of rent (see attached). She had the opportunity to mention this to the judge, if the situation truly occurred.

PPM Letter (March 3, 2013) (ECF No. 17-6, PageID.103). In summary, Ms. McDuel alleged: that her car was illegally towed on June 27, 2019; that she was wrongly evicted on August 31, 2019; and, that she was denied her security deposit return of $750.00. Amend. Compl. at PageID.32.

Ms. McDuel set forth five causes of action. First, "Breach of Lease Against Plaintiff" (defendant failed to comply with Michigan's "Landlord and Tenant Relationships Act 348 of 1972" ("LTRA")[4] and towed her car without authority). *Id*. at PageID.33-34. Second, "Landlord's Interference With Peaceful Possession, Breach of peace" (defendant towed her car while she was a tenant at the Boulder Ridge Apartments). *Id*. at PageID.34. Third, "Security Deposit" (defendant failed to return her security deposit even though she returned the keys, left the unit "in mint condition" and gave defendant a forwarding address). *Id*. Fourth, "Unfair Practice" (defendant violated the LTRA and unidentified "U.S. Codes"). PageID.34-35. Fifth, "Punitive Damages" (seeking damages under the LTRA and unidentified "U.S. Codes"). PageID.35.

---

[3] The Merl's Towing letter referred to "2019-cp07051641678-A" (PageID.104), while the PPM letter referred to 2023-cp01311546840-A (PageID.103).

[4] *See* LTRA, M.C.L. § 554.601 through 554.616. "The LTRA serves to regulate relationships between landlords and tenants relative to rental agreements and the payment, repayment, and use of security deposits." *De Bruyn Produce Co. v. Romero*, 202 Mich. App. 92, 108; 508 N.W.2d 150 (1993).

## II.    Procedural background

At the Rule 16 Scheduling Conference, the Court: denied Ms. McDuel's "Motion to show authority" (which demanded that "all those acting as officers of the court and as members of Defendant's team" produce "their lawful binding oaths, and bonds"); directed defendant to file a motion to dismiss for lack of subject matter jurisdiction; order that Ms. McDuel "shall file her response within 28 days after service of the motion pursuant to W.D. Mich. LCivR 7.2;" adjourned the Rule 16 Conference; and, ordered that "the case is STAYED as to all matters pending further order of the Court." *See* Order (ECF No. 21) (emphasis omitted).

## III.    Dismissal for lack of prosecution

Ms. McDuel did not file a response to defendant's motion as required by the Court's rules and as directed by this Court.  *See* W.D. Mich. LCivR 7.1(a) (requiring that "[a]ny party opposing a written motion shall do so by filing and serving a brief conforming to these rules") and W.D. Mich. LCivR 7.2(c) (requiring that "[u]nless otherwise ordered, any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials").  A plaintiff's failure to file a response to a motion to dismiss is fatal to the plaintiff's position and deemed a waiver of opposition to the relief sought in the motion and a forfeiture of the claim.  *See Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 Fed. Appx. 567, 569 (6th Cir. 2013) (the plaintiff's failure to respond to a motion to dismiss its claim for breach of fiduciary duty amounts to a forfeiture of that claim).  *See also, Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) (affirming district court's grant of the defendant's unopposed motion to dismiss, and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir.

4

2008) (same); *Thorn v. Medtronic Sofamor Danek, USA, Inc.*, 81 F. Supp. 3d 619, 631-32 (W.D. Mich. 2015) (granting defendant's motion to dismiss where "Plaintiff fatally provides no opposition to Defendants' arguments") (citing *Scott*, *Notredan*, and *Humphrey*). Accordingly, defendant's motion to dismiss should be granted on this basis.

### IV.     Lack of subject matter jurisdiction

#### A.     Legal standard

In addition, this lawsuit should be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Federal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Federal subject-matter jurisdiction "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008).

Here, defendant has filed a combined motion which includes a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[5] A motion to dismiss for lack of subject matter jurisdiction may be brought either as a facial attack or a factual attack. *Gentek Building Products, Inc. v. Steel Peel Litigation Trust*, 491 F.3d 320, 330 (6th Cir. 2007).

---

[5] The Court notes that defendant's brief does not set out separate arguments to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court construes the motion as contesting subject matter jurisdiction.

"A facial attack is a challenge to the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (emphasis omitted).

> When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.  If those allegations establish federal claims, jurisdiction exists.

*Id*. (internal citation omitted). "On the other hand, when a court reviews a complaint under a factual attack, as here, no presumptive truthfulness applies to the factual allegations." *The Ohio National Life Insurance Company v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  Here, defendant raised a facial attack because McDuel did not allege a basis for federal subject matter jurisdiction.

### B.    Discussion

Ms. McDuel identified the basis for this Court's jurisdiction as a federal question under 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  *See* Amend. Compl. at PageID.31.   Specifically, she contends that this Court has subject matter jurisdiction pursuant to 24 C.F.R. § 982.313 and 24 C.F.R. § 982.453. *Id*. at PageID.28.

The regulations cited by Ms. McDuel do not create a federal cause of action for tenants against their landlords. The first regulation, § 982.313 ("Security deposit: Amounts owed by tenant") provides in part that:

> (c) When the tenant moves out of the dwelling unit, the owner, subject to State or local law, may use the security deposit, including any interest on the deposit, in accordance with the lease, as reimbursement for any unpaid rent payable by the tenant, damages to the unit or for other amounts the tenant owes under the lease.

24 C.F.R. § 982.313(c).  This regulation does not create a federal cause of action by a tenant related to the security deposit.  Rather, the regulation acknowledges that the owner's use of the security deposit is "subject to State or local law."

Next, 24 C.F.R. § 982.453 ("Owner breach of contract") refers to the relationship between the government, a public housing agency (PHA) and the owner under the Housing Assistance Payments (HAP) contract. The regulation provides the PHA with remedies against the owner of the property.  *See* 24 C.F.R. § 982.453(b) ("The PHA rights and remedies against the owner under the HAP contract include recovery of overpayments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract.").  This regulation does not provide a tenant with a federal cause of action against the landlord.  S*ee, e.g., Smith v. Vistas*, No. 218CV00473JAMACPS, 2018 WL 6268816, at *2 (E.D. Cal. Nov. 30, 2018) (the plaintiff's complaint, relying on 24 C.F.R. § 982.453, did not establish a basis for federal jurisdiction, observing that "this housing regulation provides for breach of contract claims brought against landlords by public housing authorities, not by tenants, for violations of federal housing standards in the HAP context").

These regulations are authorized by the 1974 amendment to the Housing Act of 1937 (the Section 8 Housing Program), 42 U.S.C. § 1437f, *et seq*.  *See* 24 C.F.R. § 982.313 and 24 C.F.R. § 982.453.   In *Gladney v. Sureluck Homes LLC*, No. 1:13-cv-462, 2013 WL 2182797 at *2 (W.D. Mich. May 20, 2013), this Court rejected the proposition that a plaintiff's status as a recipient of housing aid under Section 8 has an implied federal cause of action against the landlord for wrongful eviction. As this Court explained, other courts addressing the issue unanimously hold "that there is no implied private right of action under Section 8":

> Plaintiff's claim in this case is that he was wrongfully evicted by the landlord, even though he had paid his rent. For purposes of the present review, the court must accept as true the pleaded, but extremely dubious, allegation that a state district court would evict a tenant who had indeed paid his rent. The core issue is whether such a wrongful evict [sic] would support a federal-court action against the landlord under Section 8 of the Housing Act of 1937.  Section 8 of the Housing Act represents an exercise of the Congressional Spending Power and does not expressly create any private cause of action for its enforcement.  *See Banks v. Dallas Hous.*

*Auth.*, 271 F.3d 605, 611 (5th Cir. 2001). The Supreme Court has held that certain provisions of the Housing Act create federal rights that are enforceable against state actors under 28 U.S.C. § 1983, see *Wright v. City of Roanoke Redevel. and Hous. Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), but the Court has never upheld a private right of action under Section 8 against a landlord for wrongful eviction, merely because the landlord is receiving voucher payments that originated with the federal treasury.

The federal courts of appeals and district courts that have addressed this issue unanimously hold that there is no implied private right of action under Section 8. Although such claims are asserted under numerous subsections of Section 8, the conclusion is invariable: no private right of action exists. *See, e.g., Johnson v. City of Detroit*, 446 F.3d 614, 625-27 (6th Cir.2006) (no private right of action under section 1437f of Housing Act against public housing project for failing to provide decent, safe and sanitary housing); *Banks v. Dallas Hous. Auth.*, 271 F.3d at 611(finding no private right of action to enforce § 1437f(e) of the Housing Act); *Salute v. Stratford Greens Garden Apts.*, 136 F.3d 293, 298-99 (2d Cir.1998) (doubting that an implied private right of action in favor of a Section 8 certificate holder existed under the statute); *Edwards v. Dist. of Columbia*, 821 F.2d 651 (D.C.Cir.1987); *Brown v. Hous. Auth. of McRae*, 784 F.2d 1533 (11th Cir.1986) (tenants had no implied private right of action against city housing authority, its executive director and board of commissioners to enforce § 1437); *Lewis v. Wheatley*, No. 1:11-cv-644, 2012 WL 774991, at *3 (N.D.Ohio Jan.5, 2012); *Harris v. BlueRay Tech. Shareholders, Inc*. No. CV-07-342, 2010 WL 1254698, at *3 (E.D.Wash. Mar. 25, 2010) (no private right of action against landlord for eviction in violation of Section 8 notice requirements); *Modica v. Reyna*, No. 1:08-CV-871, 2009 WL 2827975, at *9 (E.D.Tex. Sept.2, 2009) (no implied private right of action to sue under Section 8); *Green v. Konover Residential Corp.*, No. 3:95CV1984, 1997 WL 736528 (D.Conn., Nov.24, 1997) (no private right of action against landlord under Housing Act) (collecting cases); *Rodgers v. Garland Hous. Agency*, No. Civ. 3:01-CV-0477-H, 2001 WL 1029516, at *3 (N.D.Tex. Aug.21, 2001) ("numerous decisions support the conclusion that the United States Housing Act of 1937 does not permit an implied private right of action under section 8 programs"); *Green v. Konover Residential Corp.*, No. 3:95CV1984, 1997 WL 736528, at *9 (D.Conn. Nov.24, 1997) (holding no private cause of action under Section 8 or the implementing regulations against a private landlord seeking affirmative money relief). This conclusion is bolstered by the federal regulations governing the Housing Choice Voucher Program. 24 C.F.R. § 982.456 (tenant is not a third-party beneficiary to the HAP contract between the PHA and the owner and "may not exercise any right or remedy against the owner under the HAP contract.").

*Gladney*, 2013 WL 2182797 at *3.  "Without any federal-law claim supporting this suit, Mr.

Gladney's state-law claims do not provide this court with subject-matter jurisdiction." *Id*. at *1.

As discussed, the regulations cited in Ms. McDuel's amended complaint do not support a federal-law claim or establish federal subject matter jurisdiction.  While Ms. McDuel refers to unidentified "U.S. Codes," she does not set out any federal statute to support federal subject matter jurisdiction.  To the extent McDuel alleged any claims, those claims are based on state law, *e.g.*, alleged violations of Michigan's LTRA.  Accordingly, defendant's motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) should be granted.

### V.    Recommendation

For all of these reasons, I respectfully recommend that defendant's motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (ECF No. 23) be **GRANTED** and that this case be **dismissed**.


Dated:  July 25, 2024                                   /s/ Ray Kent
                                                        RAY KENT
                                                        Unted States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).